## ACTION BY A TRUST COMPANY TO RECOVER COMPENSATION FOR LAND WRONGFULLY TAKEN BY A RAILWAY COMPANY.

Court of Insolvency of Hamilton County.

UNION SAVINGS BANK & TRUST CO. ET AL V. BALTIMORE & OHIO SOUTHWESTERN RAILROAD CO.

Decided, October 14, 1908.

*Trusts—For the Care and Management of Property—Legal Title May be Devised for That Purpose, Where the Trustee is a Domestic Trust Company—Foreign Trust Company may Execute such a Trust in this State, When—May Bring Action for Land Unlawfully Taken by a Railway Company—Rights of a Tenant in Common—Notice of Suit—May be Made Valid, and Validity Relates Back, When— Words "Owner" and "Doing Business" Defined—Abatement Sections 6448, 6411, 148d, 3821b, 5970, 5942, 5937, 5987, 3283 and 3284.*

1. Where a domestic trust company, under the provisions of Section 3821b, Revised Statutes, is appointed trustee in a will "creating a trust for the care and management of property" in this state, the devisor may properly devise to such trustee the legal title to land in trust to exercise such care and management.

2. A foreign trust company appointed trustee of land in this state and given the legal title thereto in trust, by a will probated in another state, and of record here, may, upon giving bond here, upon established principles of comity, execute such trust to the same extent as a domestic trust company is authorized to do by Section 3821b, Revised Statutes.

3. Domestic and foreign trust companies having the legal title in trust to real estate in this state may, in the exercise of proper care and management thereof, bring a proceeding under Section 6448, Revised Statutes, to recover compensation for such land when unlawfully taken by a railroad company.

4. Where notice is served and suit brought under Section 6448, Revised Statutes, by a trustee appointed in a foreign will before record of such will here, and before bond given, but afterwards, before hearing, such record is made and bond given, such subsequent compliance with the statute will relate backward and give validity to such notice and suit.

5. The bringing of a suit by a foreign trust company trustee under a will probated in another state, and of record in this state, is not "doing business" within the meaning of Section 148d, Revised

Statutes, requiring a certificate from the Secretary of State as directed by such section.

6. A tenant in common is an "owner" of land within the meaning of Section 6448, Revised Statutes, and if ousted by a railroad company co-tenant, may sustain an action for compensation and damages under that section against such co-tenant.

7. A pending suit to recover the possession of land together with the rents, issues, and profits thereof, is not a bar to a proceeding to recover compensation for such land under Section 6448, Revised Statutes.

*E. P. Bradstreet, John Weld Peck* and *W. S. Little,* for plaintiffs.

*Edward Colston, George Hoadly, Edward Barton* and *R. S. Alcorn,* contra.

WARNER, J.

This action has been brought by the plaintiffs, under the provisions of Section 6448 of the Revised Statutes, against the defendant, to recover compensation for certain land alleged to have been taken possession of and occupied without right, legal or equitable, and not appropriated and paid for by the defendant, together with damages to the residue. Pleadings as in ordinary civil actions, including answer and reply, have been filed herein, under which all issues made, other than amount of compensation and damages, have been submitted to the court for determination.

I will state as concisely as possible the conclusions at which I have arrived after careful consideration of the evidence and authorities presented on the contested claims submitted.

While the chapter on appropriations, in which said Section 6448 is found, does not provide for any pleadings other than a petition, the subsequent pleadings filed in this case are proper. Section 6411 of the Revised statutes provides that:

"The provisions of law governing civil proceedings in the court of common pleas shall, so far as applicable, govern like proceedings in the probate court when there is no provision on the subject in this title."

Minshall, J., in *Railroad Co.* v. *O'Harra,,* 48 O. S., at page 356, in commenting upon this section says, referring to procedure in the probate court:

"Indeed the special rules of procedure provided for this court are quite limited, because by Section 6411, Revised Statutes, all the provisions of law governing civil proceedings in the court of common pleas are made applicable to the probate court where there is no special provision on the subject applicable to that court."

The pleadings subsequent to the petition in this case therefore become proper and necessary to define the issues, there being "no provision on the subject" in the chapter on appropriations, and such pleadings should have the same construction and legal effect as in civil proceedings in the court of common pleas.

During the progress of this case several applications have been made to the court by way of motions, which will now be disposed of.

The defendant filed a motion to dismiss this proceeding because the notice provided in said Section 6448 is not sufficient in certainty of description of the real estate therein described.

The petition having alleged due service of the notice required by said section, and the answer having admitted such service of notice, without attacking the sufficiency thereof by any allegation whatsoever, I think the defendant is concluded by such admission and can not on the hearing contest the sufficiency of such notice. This motion must therefore be denied.

At the conclusion of the evidence a further motion was made by defendant to dismiss the proceedings, "for the reason that there is no evidence that the premises described in the ptition are not held by any agreement in writing with the owner thereof."

I think the evidence on cross-examination of a witness for the defendant brought out the fact that no such agreement was known to exist, or was found in the archives of the defendant or its predecessor in interest, which it seems to me is sufficient to sustain the allegation of the petition in this regard. Motion denied.

A further motion was made by defendant to dismiss as to the thirty-foot strip of land described in the petition, on the ground that the defendant is the owner of eleven-twelfths thereof,

which ownership is admitted, and is and has been in possession thereof as a tenant in common, and that this court is without jurisdiction to require it to appropriate the remaining one-twelfth thereof in this proceeding.

I am of the opinion that the word ''owner'' in said Section 6448 includes one having title to an undivided fractional part of land, and as one tenant in common may oust his co-tenant from possession of the common property, that when this is done by a railroad company the co-tenant can sustain this proceeding to recover compensation for his interest so taken. Motion denied.

A further motion was made by the defendant to dismiss this proceeding, upon three grounds:

First. ''That the Minneapolis Trust Co. has failed to show by the evidence, or otherwise, that it has complied with the requirements of Section 148*d* of the Revised Statutes of Ohio, by procuring from the Secretary of State the certificate therein mentioned.''

Second. ''Because the evidence fails to show that the plaintiffs, or either of them, has the right or capacity to maintain'' this suit. And,

Third. ''For failure to show a cause of action under the statute in favor of the plaintiffs, or either of them.''

On this motion the arguments and briefs have taken a very wide range, and have received careful consideration; but in the view of the case taken by the court it will become unnecessary to refer to all the propositions submitted by counsel.

As to the first ground set up in said motion, I am of the opinion that the bringing of this suit is not ''doing business'' within the meaning of Section 148*d*, and as no other acts are shown this ground must be held insufficient. *C. E. & C. Co.* v. *Poole*, 24 L. R. A., 289, note and authorities there cited.

It is contended in support of the other grounds set up in this motion that a trust company, domestic or foreign, has no legal authority or capacity to act as executor in this state.

Under the pleadings and evidence I am of the opinion that this question does not properly arise in this case. It is true that the title of the case describes the plaintiffs as executors and trustees, and it is also alleged in the body of the amended petition that they are executors and trustees of their respective testators, but the material and controlling allegation of the

amended petition is "that as such trustees the plaintiffs are seized in fee simple as tenants in common of the real estate hereinafter set forth." The amended petition, therefore, and the evidence in support thereof, clearly shows that the plaintiffs are asserting rights in this case simply and alone as trustees of an express trust.

The defendant attacks by this motion their legal capacity to so act. So far as the Union Savings Bank & Trust Co. is concerned, it being a domestic corporation, no question has been raised as to its trusteeship. Section 3821*b* of the Revised Statutes provides as to trust companies:

"Any such company may be appointed trustee under any will or instrument creating a trust for the care and management of property under the same circumstances, in the same manner and subject to the same control by the court having jurisdiction of the same as in the case of a legally qualified person."

The capacity of this company to act as such trustee under this provision of said section in the "care and management" of property is not open to question. That a proper exercise of such "care and management" does authorize it to bring or join in this proceeding seems also to be true. I think the terms "care and management" are not used in this section in any restricted sense but in a sense large and broad enough to sustain the bringing of this action.

It seems to be well settled that a trustee having the legal title to land may in the proper management of the trust bring any action necessary to protect or defend such land, or to recover possession of such property, or compensation for it. when unlawfully appropriated by another. I find from the evidence that the legal title to the undivided moiety of the land in question was devised to this company as trustee, in trust for certain purposes set forth in the last will and testament of Adolphus H. Smith, deceased. I think that as the owner of such legal title it should and must in the proper "care and management" of the property entrusted to it protect such title and such property, and is competent to institute this or any other proper suit in that behalf.

It is urged, however, that in any event the trustees take only

so much of the legal estate as the purposes of the trust require, although words of inheritance are used in creating the trust, and the opinion of the court in *Gilpin* v. *Williams*, 17 O. S., 417, is cited as sustaining this view. But that case involved a question arising before Section 5970, Revised Statutes, was enacted, which section provides that the devisee shall take all of the estate of the devisor unless it clearly appear that a less estate was intended. And besides it seems clear that the purposes of this trust required that the trustee be vested with the full legal title as devised to it.

So far, then, as the Union Savings Bank & Trust Co. is concerned I think this motion is not well taken.

The principal contention, however, on this motion has been directed against the Minneapolis Trust Co., a foreign corporation, and its capacity to act as co-plaintiff has been earnestly attacked.

It appears from the evidence that John T. West died testate March 13th, 1899, being at that time a resident of Hennepin county, Minnesota. His will was duly probated in that county on April 10th, 1899. This trust company qualified as executor of said will, performed the ordinary duties attending the settlement of the estate, reported to the proper court, and was ordered on May the 1st, 1900, to distribute to itself as trustee under said will more than $135,000 of personalty. That the legal title to certain real estate was also devolved upon it as such trustee, including that involved in this proceeding. Such distribution was made, and the final account of said company as executor was duly presented, audited and allowed. On December 14th, 1907, said company joined with its co-plaintiff in this case in giving the notice required by said Section 6448, and joined as plaintiff in a petition filed thereunder in this court December 26th, 1907, and in the amended petition filed December 30th, 1907. On January 29th, 1908, a duly authenticated copy of said will of John T. West, deceased, was filed for record in the Probate Court of Hamilton County pursuant to Section 6937 of the Revised Statutes, and on February 14th, 1908, said company gave bond in said probate court of this county as trustee under Section 5988 of the Revised Statutes. Upon these facts numerous objections have been urged against the right

and capacity of this company to join in this proceeding, some of
which seem to be more technical than meritorious. The basic
contention is that the will of said West does not create a trust
to be executed by a trustee as distinguished from an executor.
The material provisions of the will upon this question are as
follows: after directing the payment of such charges as apper-
tain to the ordinary administration of his estate, the will pro-
ceeds:

"Second. I give, devise and bequeath all my property of
whatever nature, real personal or mixed and wherever situated,
to my executor hereinafter named, in trust nevertheless for the
purposes hereinafter set forth.

"Third. I desire and direct that my estate shall be so in-
vested and managed that it shall yield the best income compati-
ble with safety. I desire, however, that if practicable my
hotel property in the city of Minneapolis, known as the West
Hotel, shall be continued and operated as a hotel during the
life of my daughters, Clara Howard West and Nellie Walker
West, or so long as the same can be profitably managed as a
hotel. And that while so belonging to my estate proper ex-
penditures shall be made for the purpose of maintaining the
character, condition and management of said hotel in a first-
class manner. Should my executor, however, deem it for the
best interests of my estate that my hotel, or any part of my
said estate, shall be leased or sold, and should a majority of
the directors of my executor so determine, then and in that
case I hereby expressly authorize and empower my executor so
to sell or lease by such deeds or instruments of conveyance,
or lease upon such terms and conditions and for such prices
as to it shall seem best, and the proceeds thereof to invest in
such manner as my said executor shall determine.

"Fourth. And whereas there is a bonded indebtedness on
said hotel, therefore I desire my executor to provide such a
sinking fund from the income of my estate as shall in its judg-
ment be right and proper to meet the same, either on expira-
tion of the present loan or any renewal of the same or any part
thereof, provided that an annual income of not less than $3,000
shall be paid to each of my said daughters quarterly in ad-
vance.

"Fifth. After providing for the proper care and mainten-
ance of my hotel and other real property by the creation of a
sinking fund or otherwise as aforesaid, I direct my executor
to pay over annually to each of my said daughters one-half of
the net income of my estate until my daughter, Nellie Walker

West, shall reach the age of forty years. My executor and trustee shall thereupon divide my estate as then constituted into two equal parts or.portions as near as may be, provided that if in so dividing said estate my executor shall deem it best to assign to each of said legatees an undivided one-half of any portion of my estate it may do so; and thereupon one of said parts of my estate shall vest in each of my said daughters. * * *

"Eighth. I nominate and appoint the Minneapolis Trust Co. executor of this my last will and testament, and trustee of the trusts herein created."

The construction of these provisions, so far as the land located in Ohio is concerned and affected in this case, must be determined by the law of this state.

That the testator intended, after settlement of the ordinary and usual matters connected with the administration of his estate, to create a trust as to the entire remainder thereof, I think is apparent from the terms of his will. The intention of the testator once discovered must prevail, if not unlawful, and must be given full respect and enforcement in this state as to.property here located.

The further and very important question remains, whether he intended such trust to be executed by his executor as such or as trustee. In directing what was to be done in executing the trust, in every instance but one he uses the term "my executor," and in the one instance he says "my executor and trustee." If this were all, the conclusion might be reached that he intended his executor as such to execute the trusts of his will. But by the last clause of Item 8 he distinctly and clearly removes all doubt and appoints said company "trustee of the trusts herein created," and this in clear distinction to its appointment as executor. I think this company occupied the dual relation of executor and trustee to this estate, and that the legal title to land devised in trust devolved upon it as trustee when it assumed the duties of trustee.

The case of Gandolfo v. Walker, 15 O. S., 251, is cited by defendant as sustaining its contention. This was a suit against the sureties on the bond of an executor. One defense was that the money sued for was not assets coming into the hands of the executor as such but was received by him as trustee under the

provisions of the will.  The will provided as follows, so far
as the alleged trust was concerned:

"I direct that my brewery be carried on under the direction
and superintendence of my executors for the benefit of my es-
tate for the term of seven years after the date of my decease,
and for this purpose I authorize my executors to employ com-
petent persons at proper salaries to carry on the same; and at
the expiration of seven years I give and devise my said brewery
property and the proceeds thereof, together with the machinery
and fixtures and the stock at that time on hand, to the children
of my brother William Walker, my brother James Walker and
my sister Ann share and share alike."

The Supreme Court held that the entire will of the testator
"constituted his plan for administering the estate"; that the
brewery business was the business of the estate, to be carried on
at the expense and risk of the estate, and that there was no
devise or bequest to the executor in trust as trustee either of the
brewery or of the funds to carry it on; and the claim of the de-
fense was not allowed.

But Welch, J., who delivered the opinion in this case, in re-
ferring to trusts to be executed by an executor as trustee inde-
pendent of the executorship, says:

"I admit that a testator may direct the continuance of a trade
or business by his executor as trustee independent of his execu-
torship, and such cases often occur.   But they are always either
where there is a devise or bequest to the executor in trust, or
where part of the assets are specifically set apart and directed
to be invested as a trust fund.   In the former case the executor
receives them at once as trustee and they never become assets."

In the case at bar there was a devise of the entire estate real
and personal, to the executor in trust, which according to the
law as expounded by Welch, J., just quoted, said trust company
must have received as trustee, and hence no part of it became
assets in its hands as executor except such part of the personalty
thereof as was necessary to be used in the settlement of the usual
and ordinary charges of administration.

Attention has also been called by the defendant to the case
of *Mathers, Admr.,* v. *Meek,* 23 O. S., 272.  The opinion of
McIlvaine, J., at page 290 is sufficient to show that the will in

that case did not specifically appoint a trustee, as did the will of said West. He says:

"Now in the will of Benjamin H. Johnson there is not a single expression from which it can be clearly inferred that the testator intended that the parties named in the will as executors should manage this fund in the capacity of special trustees and not in the capacity of executors."

Justice McIlvaine further says in the same opinion:

"To constitute the person named in the will as executor a special trustee separate and apart from his office of executor it is not enough that the powers granted to him, or the duties imposed upon him in relation to a particular fund be such as are unusual in the course of ordinary administration; it must also appear that the intention was to withdraw the particular trust from the management and control of the executor as such and to create a separate office for its management."

It is apparent from the terms of the will of said West that he intended to create a trust estate which included the Ohio land in question, and intended to appoint a trustee to execute such trust. I must hold, therefore, that a trust was created by the will of said West, which included the land in controversy here, and that the Minneapolis Trust Company was appointed the trustee thereof, and intrusted with the legal title thereto. Can it act as such trustee in this state? Section 5987 of the Revised Statutes, and others following it, specifically provide for the execution of trusts created by wills made out of the state, and relating to land situated here, by trustees named in such foreign will.

I think upon well settled principles of comity a foreign trust company having the legal title to land in this state is entitled to exercise the same powers as to the "care and management" of such property as are conferred upon domestic trust companies by said Section 3821b, as herein defined.

It is objected, however, that inasmuch as the authenticated copy of the West will had not been admitted to record in the probate court of this county under Section 5937 of the Revised Statutes, nor the bond given as provided by Section 5988, until after the service of the notice required by said Section 6448, and after suit brought, that such notice is absolutely void and the

suit improperly instituted. If this were so, at best it would only involve a matter of costs, as the plaintiff could at once upon dismissal commence *de novo,* unless prevented by the running of the statute of limitations. But is the claim tenable? The argument is based upon provisions of Section 5942, Revised Statutes, which declares:

"No will shall be effectual to pass real or personal estate unless it shall have been duly admitted to probate or record as provided in this title."

Doubtless it would have been strictly regular to have followed the requirements of said sections as to record of the will and the giving of a bond before attempting to proceed under said Section 6448 in the bringing of this proceeding. But the vital question now presented is, did not subsequent compliance with said sections as to record of the will and giving of bond relate backward and give validity to the acts done? The case does not present any question of ratification or adoption. There is nothing to be ratified or adopted, and no one to do either of these acts from the very nature of the case. The principles therefore applicable to the doctrine of ratification and adoption would be misleading and have no bearing upon the real question at issue here. No question is or can be successfully raised, but that the record of a foreign will as provided by Section 5937 is necessary to effectually pass the title to property in this state, but when this is done will the doctrine of relation apply and validate acts previously done which after such record may be performed? I think this is a proper case in which to apply the doctrine of relation. It is the provisions of the will that establish title, while the record thereof only make such title "effectual," and relates more particularly to the establishment of a proper chain of title in the state and county where the land is situated.

In the case of *Poole* v. *Fleeger*, 11 Peters, 185, which involved a question in reference to real estate located in Tennessee and devised by a will admitted to probate in Pennsylvania, which will was registered in Tennessee, objection was made on the trial to the introduction of such will as evidence, on the ground that the will was not registered in the state of Tennessee until after the institution of the suit. But the court held:

"Where a will devising lands made in one state is registered in another state in which the lands lie the registration has relation backward, and it is wholly immaterial whether the same was made before or after the commencement of a suit."

*Poole* v. *Fleeger* and the case at bar seem to be on all fours with each other upon the point now being considered.

No case in Ohio directly decides the point. *Douglass* v. *Miller*, 3 N. P., 220, did decide, apparently on the authority of *Woodbridge* v. *Banning*, 14 O. S., 328, that a title by devise was a new and independent title, not affected by conveyances previous to probate of a will, but this case appears to have been reversed by the circuit court and dismissed by plaintiff in error in the Supreme Court. *Woodbridge* v. *Banning, supra,* practically decided that a devisee under a will finally established against the contention of certain heirs at law was not estopped by a decree in partition, secured by such heirs at law against the objection of said devisee pending such contest, from setting up a title as devisee under such will of the common ancestor admitted to probate subsequent to the said decree in partition. Manifestly the doctrine of relation as interpreted in *Poole* v. *Fleeger, supra,* was not decided or involved. In *Woodbridge* v. *Banning* it may have been invoked by the heirs at law to defeat the innocent devisee, who had done nothing in the entire matter but contest for his rights; but to apply it to the facts of that case would have been a violent misapplication of the doctrine. A title by devise is doubtless a new and independent title as distinguished from a title by descent, and is in abeyance until probate of the will, or record thereof in this state in the case of a foreign will, but probate once finally had, or record in case of a foreign will, establishes the next link in the chain of title from the devisor, and makes the title of the devisee effective from the death of such devisor.

It has been further urged that ancillary administration in Ohio is also a prerequisite to the vesting of title in this trustee. I do not so interpret the statutes of this state. The ordinary objects of administration are well understood, and so far as real estate is concerned include the payment of the debts of the deceased. These objects in this case had been accomplished by the administration in the state of domicile eight years ago, and

no creditors are moving in Ohio or shown to exist here, and under the circumstances it must be presumed that none do exist. The title to land in the devisee can only be divested to pay debts. There being no debts the title is perfect. Under the comprehensive provisions of Section 5987 no administration in this state appears to be required as preliminary to the execution of such trusts as this at bar, although it is clear that Ohio creditors might invoke ancillary administration as against any property located in this state. But no such creditors appear to exist. I think, therefore, that this motion must be denied.

Coming now to the issues made by the pleadings. The answer alleges the pendency of another action in the Superior Court of Cincinnati, wherein the plaintiffs at bar are plaintiffs and the Ohio & Mississippi Railway Company is defendant, commenced December 31st, 1887, to recover possession of the same land, with rents, issues and profits and damages, which action it is claimed should abate this proceeding. I think not. While the parties to the superior court case are not identical doubtless they might be made so by the substitution of the defendant in this case in the place of the defendant in that case. But there is no identity of causes of action nor of relief sought, and while the plaintiffs must establish title to recover in either case this is but a matter of proof. This done in the superior court case would hardly entitle plaintiffs to a writ of possession under the circumstances as against the defendant at bar, a great public corporation, and the interests of the public being vitally concerned, but doubtless would result if litigation was continued in some proceeding under the chapter on appropriation of property. However the distinction between the cases is obvious and complete.

It might be added that it is very doubtful whether the superior court case to recover possession is the proper remedy, in view of the opinion of Minshall, J., in R. R. Co. v. O'Harra, supra, where he says, "It would seem that when a highway has been taken possession of by a railroad company under an agreement with the public authorities a proceeding to compel condemnation is the only remedy of the land owner." If the "only remedy" then ejectment must fail.

There appears to be a clear distinction drawn by the Supreme Court as to remedies between the case of a highway occupied by a railroad company under proper authority and a case where such company takes possession of private property without right, as in *Railroad Company* v. *Robbins*, 35 O. S., 531. The doctrine of election of remedies, therefore, as held in the latter case would not apply to cases where a highway is occupied of right, as is claimed by defendant in case at bar.

I come now to the question of title. The land in controversy consists of two parcels. 'The principal contention arises over a tract alleged to be 60 feet wide and some 347 feet in length, lying next south and adjoining the former towpath of the old Whitewater canal, and claimed to have constituted in 1853 and for a long time thereafter a section of the Old Lower River road, which appears to have been a county road but now abandoned. Other lands of plaintiffs, the title to which is not in question, abut on the south line of said strip and run back to the Ohio river. The plaintiffs have shown a record title to this parcel in controversy, subject to an admitted right of defendant to maintain a single track through the entire length thereof, and unless the defendant has obtained title by prescription to the entire strip now occupied by it, upon the law and the evidence the title of plaintiffs must prevail, subject to the right of the one track aforesaid. If material to be determined in this case, I am of the opinion that the record evidence establishes the width of the Old Lower River road to be sixty feet.

The defendant claims that by virtue of an agreement with the commissioners of Hamilton county, made in November, 1853, its predecessor, the Ohio & Mississippi Railroad Company, acquired the right to lay its tracks in said Old Lower River road from a point near to and west of Millcreek to Leib's bridge, which includes the section of said road in question, and considerable distance besides, under the provisions of the statute now known as Section 3284 of the Revised Statutes. That said road was diverted, as permitted by said section, and constructed just north of said canal from Leib's bridge east to Millcreek. That said agreement gave said company color of title to the whole road; that by occupancy of a part thereof the company was in legal possession of the entire road, and that such occupation by said

company and the defendant, its successor, having continued adversely for more than twenty-one years, its prescriptive title is complete.

The plaintiffs, however, assert that the O. & M. Co. acquired whatever rights it obtained from said commissioners under the terms of Section 3283 of the Revised Statutes; that its arrangement with them did not give color of title to the whole road, and that the possession by the O. & M. Company and the defendant at bar has not been adverse for twenty-one years last past.

It appears that the agreement referred to took the form of correspondence between the parties. The president of the O. & M. Company addressed the commissioners of Hamilton county in the following terms:

"This company desires to occupy the south line of the county road (for the location of our track) from Leib's bridge to Millcreek, and desire to know upon what terms an arrangement for this purpose can be made."

The commissioners of Hamilton county replied as follows:

"Your note of the 23d inst. was received and has been before the board of county commissioners. You are pleased to say that your railroad company desire to occupy the south side of the river road for the location of your track from Leib's bridge to Millcreek, and to know upon what terms an arrangement can be made for the above purpose. Desiring as we do the success of all meritorious public enterprises, we believe it our duty as public servants to contribute to all such in any reasonable and proper way. This board therefore makes the following official reply to your note."

Then follows in the letter of the commissioners certain conditions, which were substantially agreed to afterwards by the O. & M. Company, but which are not material to this inquiry.

It will be observed that the county commissioners, who were the proper "public authorities" to be consulted in the premises, were applied to in this matter, and that the phraseology used includes the essential words of said Section 3283, which shows that the parties were intending to act under that section and not under said Section 3284.

While the opening of a new road north of the canal, as pro-

vided in said agreement, operated to transfer public travel thereto after some time, this was not a diversion of the Lower River road within the meaning of Section 3284, but the construction of such new road was simply one of the conditions imposed by the county commissioners, the proper public officers, upon the O. & M. Company, as permitted by Section 3283, in granting the right to jointly "occupy" a part of said road with the public. The company did not ask "to cross" said road, but only "to occupy" a part thereof, and the commissioners were acting strictly within their authority in making the conditions of such occupation as they assumed to do. The road was not changed or diverted, by the execution of this agreement, but it still remained in the old location for the use of the public and abutting owners. In making these conditions the commissioners may have had in mind, and doubtless did, the inconvenience that would result to public travel by reason of this track laid in the public road, and hence the requirement as to the building of another road north of the canal. But this was for the benefit of the traveling public and not for the owners of land abutting on the road, who, from the location of such new road, could not be specially benefited thereby.

Did the right granted by said agreement give color of title to the whole road?

Color of title is defined to be "that which in appearance is title but which in reality is not title" (*Wright* v. *Mattison*, 18 Howard, 56). But there must be appearance of title, which is tantamount to saying that the land must be described in the instrument giving color of title, and can not include any part not so described (*Humphries* v. *Huffman*, 33 O. S., 395). The descriptive words in said agreement are "the south line of the county road for the location of our track, from Leib's bridge to Millcreek," in the letter of the O. & M. Company to the county commissioners; "the south side of the River road for the location of your track, from Leib's bridge to Millcreek" in the answer of the county commissioners. The description is substantially the same in both letters, and can not be fairly construed to include the whole road. The county commissioners had no legal power to grant anything more than a right to jointly oc-

cupy the road with the public and the abutting owners (*Railroad Co.* v. *Elyria,* 69 O. S., 414). The right to lay one track and to jointly use said road to that extent with the public must be held to include all that was given or intended to be given by said agreement.

There being no color of title to the whole road, the right acquired therein extends only to the land actually occupied—the *pedis possessio*—by the one track.

As to the running of the statute of limitations against the plaintiffs, I think the evidence shows that for some time after the opening of the O. & M. in 1854 the River road was used jointly by the public and said company, and that gradually the O. & M. acquired all the abutting land between Leib's bridge and Evans street, and adapted the same to its purposes, including the River road between those points. I also think it is shown that from Evans street to Millcreek, which includes the land in question, the joint use of the road continued until the explosion at Crawford's mill, about April 4th, 1888.

I conclude, therefore, that the defendant and its predecessor have not had adverse possession of the land in question for twenty-one years prior to the bringing of this action, and that the title thereto is in the plaintiffs, subject to the servitude of one track that has existed therein for more than twenty-one years. I find from the evidence that only one track was laid on the land in suit prior to 1888.

The extent and width of the right acquired for the one track becomes important to determine. A track in this connection must not be confounded with the usual right-of-way. The right to lay one track, not a right-of-way, is what was originally acquired. It appears that the original track was a broad gauge, later changed to a standard, and that the ties were about eight and a half feet in length, and not to exceed nine feet, upon which the rails were laid. No reason exists in this case why the limits of the "track" should be extended beyond the actual possession, the *pedis possessio,* and I think that nine feet will fully cover such possession, and is certainly commensurate with the description used by the parties in the original agreement.

It has been urged that the court should locate such track with some exactness in said road if the conclusions of the court were

adverse to the claims of the defendant as to title. Upon this subject the evidence is conflicting as well as confusing in the extreme, and I am of the opinion that a determination of this matter is not essential or important in the further progress of this case to a jury. The value of the land taken, subject to an easement of nine feet through its entire length, can be determined by evidence, and the damage to the residue by reason of the land taken can be shown by testimony, excluding the nine-foot track from the consideration.

As to the thirty-foot tract described in the petition, no serious contest has been made, and I find on the evidence that the plaintiff are the owners of one-twelfth thereof.

A jury will be impanneled to assess compensation and damages.